Brewer *et al. v.* Automobile Sales Co.*

(Division A. March 7, 1927.)

[111 So. 578. No. 25904.]

1. BILLS AND NOTES. *Presentment of note elsewhere than at bank, where payable, is insufficient to hold accommodation indorser (Hemingway's Code, sections 2651, 2665).*

   Under Laws 1916, chapter 244, sections 73, 87 (Hemingway's Code, sections 2651, 2665), presentment for payment at maker's office of a note made payable at a bank is insufficient to hold accommodation indorser thereon.

2. BILLS AND NOTES. *Evidence held to show sufficient presentment of note, payable at bank.*

   Evidence that note, payable at bank, was presented to an employee thereof, to whom witness had been accustomed to present such instruments, and that she retained the note till bank closed for all day, *held* to disclose a sufficient presentment, notwithstanding testimony of the cashier not sufficient to negative such employee's authority to handle such matters.

3. BILLS AND NOTES. *Notice of dishonor, not showing note was presented at proper place, was insufficient (Hemingway's Code, sections 2674, 2731).*

   Under Laws 1916, chapter 244, sections 96, 153 (Hemingway's Code, sections 2674, 2731), notice of dishonor not setting forth that note was presented at the proper place was insufficient.

4. BILLS AND NOTES. *Notice of dishonor or defect therein held waived by accommodation indorser after maturity of note promising to pay (Hemingway's Code, section 2687).*

   Under Laws 1916, chapter 244, section 109 (Hemingway's Code, section 2687), defect of notice of dishonor in not showing presentment of note for payment at proper place *held* waived by accommodation indorser after maturity of the note promising to pay it; it being clear that, if he received and examined the notice, he knew of its defect, and that, if he did not receive it, he must have acted on the theory that no such notice had been given to him.

5. BILLS AND NOTES. *Waiver of notice of dishonor of note may be proved under allegation of the giving of such notice.*

Under allegation of declaration in action on note of the giving of notice of dishonor, waiver of such notice may be proved.

6. TRIAL. *Error in giving instruction, predicated on finding of a fact of which there was no evidence, held cured by instruction that fact of which there was evidence was insufficient.*

Error in giving instruction to find that notice of dishonor had been duly given, if jury believed notice had been mailed. that note had been presented at a certain bank, and had been dishonored, when the only evidence was that the notice stated that the note had been presented at maker's office residence, *held* cured by instruction that notice of presentation and demand of payment at such office was insufficient.

7. TRIAL. *Omission from an instruction of condition of knowledge when one made a promise held proper, where it is clear from the evidence that he had the knowledge.*

It is proper to omit from an instruction a condition of one having had knowledge of a certain fact when he made a promise, where it is clear from the evidence that, if he made the promise, he knew of the fact in question.

8. APPEAL AND ERROR. *It was harmless to charge liability because of promise, though no presentment was made, where evidence disclosed there was presentment.*

Where evidence disclosed there was presentment, it was harmless to charge liability because of a promise, though no presentment was made.

9. SALES. *By retaining car bought, and giving renewal note after knowledge, buyer waived defense that car was used one.*

Waiver of defense that car bought as new had been used was waived by buyer, after discovering the fact, keeping and using it, and, in consideration of extension of time, giving renewal note.

---

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 1029, n. 30; Bills and Notes, 8CJ, p. 550, n. 5; p. 676, n. 6; p. 709, n. 12; p. 977, n. 48; p. 1055, n. 78; Sales, 35Cyc, p. 240, n. 75; p. 242, n. 77, 79; Trial, 38Cyc, p. 1634, n. 15; p. 1640, n. 62; p. 1786, n. 97; Presentment of note at particular place as necessary to charge indorsers, see 3 R. C. L. 1199.

APPEAL from circuit court of Coahoma county.
HON. W. A. ALCORN, JR., Judge.

Action by the Automobile Sales Company against Dan Brewer and another. Judgment for plaintiff, and defendants appeal. Affirmed.

*Cutrer & Smith* and *Vincent J. Brocato,* for appellants.

I. The peremptory instruction asked for by the appellant, J. W. Cutrer, should have been granted. An accommodation endorser defined 1 Words & Phrases, 75; Norton Bills & Notes, 7 Cyc. 737. At common law, as to an accommodation endorser after maturity of a negotiable instrument, liability did not exist unless a new valid and subsisting consideration flowed to the accommodation endorser. By the enactment of the Negotiable Instrument Law this rule was changed to conform to the need of an ever increasing commerce. *Cowan* v. *Hudson,* 105 Miss. 507.

For the liability of a compromisor surety or guarantor rests upon the presumption of participation in the original consideration. *Clopton, Executor,* v. *Hall,* 51 Miss. 482.

Prior to the enactment of the Negotiable Instrument Act, chapter 244, Laws 1916, a party placing his name on the back of such an instrument before delivery became a co-maker. *Pearl* v. *Cartwright,* 81 Miss. 300; *Lindsay* v. *Parrott,* 108 Miss. 161, 55 So. 412.

But by the force of the enactment of the Negotiable Instruments Law, a party so placing his name on such a note before delivery is an endorser and cannot be held in any other capacity, and as such in order to render him liable thereon is entitled to notice of presentment, demand on, and dishonor of those who are primarily liable, and failing such demand and due notice to him, he is discharged. *Rockfield et al.* v. *First National Bank of Springfield,* 83 N. W. 392, 11 L. R. A. (N. S.) 842; *Deahy* v. *Choquest et al.,* 14 L. R. A. (N. W.) 847, 67 Atl. 421; 7 C. J. 74, 75, 76, 77, 3 R. C. L. page 1225; *Taylor* v. *Ross et al.,* 129 Miss. 536, 92 So. 637; *Gresham et al.* v.

*State Bank of Sunflower*, 131 Miss. 20. See, also, sections 29, 64, 89, and 102, Article 2 of Negotiable Instruments Law, and section 2606, Hemingway's Code.

Notice of dishonor is necessary to hold parties to a bill or note, who are secondarily liable, such as drawer and indorser, except in so far as otherwise provided by the statute. Failure to give notice of dishonor without proper excuse therefor operates to discharge the indorser, or the drawer, from his obligation absolutely, and not only discharges such party from his obligation as drawer or indorser, as the case may be, but also operates as a complete satisfaction as to him, of the indebtedness for which the paper was received, and he cannot again be made liable, except by his own voluntary act. 8 C. J., sec. 890, page 634, et seq.; sec. 895, page 1076, page 817; 3 R. C. L., page 1224; *Gresham et al.* v. *State Bank of Sunflower*, 131 Miss. 20, 95 So. 65.

In the case at bar it is incontrovertible that if any liability exists at all as to the appellant, J. W. Cutrer, such liability is a conditional one. There is no proof in this cause that the note was presented to the proper party to whom authority was delegated to receive payment of the note in question. Assuming that the note was duly presented for payment to the parties to whom as a legal consequence it should have been presented, yet there is no proof that the note was dishonored.

We are positive and certain from the testimony in this cause that no notice as required by law, and under the provisions of the instrument itself was given to the endorsers or the parties legally entitled to such notice. Failure to give such notice without proper excuse, therefore operates to discharge the endorser from his obligation absolutely, and not only discharges such party from his obligation as endorser as the case may be but also operates as a complete satisfaction so far as he is concerned of the indebtedness for which the paper was received, and he cannot again be made liable. *Gresham et al.* v. *State Bank of Sunflower, supra; Hawkins* v.

*Shields,* 100 Miss. 739, 57 So. 4; *Holmes* v. *Preston,* 70 Miss. 152.

The judgment of the lower court should be reversed and remanded.

In granting instructions seven and eight for the plaintiff the court was unquestionably in error. Grant for the sake of argument that the appellant, Cutrer, may have made the statements attributed to him in the assumptions of the instruction yet such statements did not as a matter of law constitute a waiver, and the court was manifestly wrong in so instructing the jury. Under no circumstances would he be liable as a principal, provided the defendant, Brewer is liable. Such is not true under the recent enactment of the Negotiable Instruments Law, and the decisions based thereon. 3 R. C. L. 1225; 7 C. J. 74; *Taylor* v. *Ross,* 129 Miss. 536; *Gresham et al.* v. *State Bank of Sunflower,* 131 Miss. 20.

*Maynard, FitzGerald & Venable,* for appellee.

J. W. Cutrer contends that he did not receive notice of protest and that the note was not duly presented to the bank where it was made payable. As to the presentment of the note at the bank and to the defendant, Dan Brewer, there is nothing to contradict the testimony of the notary, who presented the note. He testified that within banking hours, he carried the note to the bank and also testified that he left it there, as likewise did the witness, the young lady from the bank. Notary Martin further testified that he mailed notice to Cutrer on the same date. In addition to this, the witness, Mr. Blank, testified that he saw Mr. Cutrer after default on the note and Mr. Cutrer said that he would take care of it very shortly.

Even though there had been any irregularity in failing to give the notice, this would constitute a waiver. *Robbins* v. *Pinckard,* 5 S. & M. 51; *Harvey* v. *Troupe,* 23

Miss. 538. The question of whether or not Mr. Cutrer made such a statement was fairly submitted to the jury.

See section 105 of Negotiable Instrument Law; section 2683 of Hemingway's Code as to notice of dishonor. See, also, sections 2673, 2674 and 2687, Hemingway's Code, and sections 95, 96 and 109, Negotiable Instrument Law.

The notice and other facts in the transaction bring the case squarely within the above sections of the Negotiable Instrument Law.

*Cutrer & Smith,* for appellant, in response to questions by the court.

I. The first query is, assume that the evidence is sufficient to warrant the jury in believing that the note sued on was presented to and payment refused by both the maker and the bank at which the same was payable. The notice of dishonor, however, mailed to J. W. Cutrer recited only that it was presented "at the office of Dan Brewer to the person in charge." (a) Was presentment for payment to Brewer sufficient under the Negotiable Instrument Law to charge Cutrer as endorser, or should it have been presented for payment to the Planters Bank of Clarksdale? In answer to proposition "(a)," we submit that proper presentment at the place at which the instrument is payable, to-wit, the Planters Bank of Clarksdale was essential.

Where place of payment designated in the bill or note is a particular bank, presentment and demand at the specified bank are necessary in order to charge the endorser. *Brownell* v. *Freese,* 10 Am. Rep. 239; *Sullivan* v. *Mitchell,* 6 Am. Dec. 546; *Bartholomew* v. *Everett First Nat. Bank,* 52 Pac. 239; *Gilpin* v. *Savage,* 94 N. E. 655; section 2651 of Hemingway's Code of 1917, being section 73 of Negotiable Instrument Law; section 2648, Hemingway's Code; section 70, Negotiable Instrument Law; section 2653, Hemingway's Code; section 75, Negotiable Instrument Law.

Note payable at a particular bank must be presented there and payment demanded there at maturity to charge the endorser. *Lee Bank* v. *Spencer*, 39 Am. Dec. 734; *Woodbridge* v. *Brigham*, 13 Mass. 556. If a promissory note is made payable at a particular place, demand on the maker or acceptor at that place must be made in order to authorize recovery against endorser. *Leonard* v. *Olson*, 86 N. W. 677; *Oxnard* v. *Darnum*, 56 Am. Rep. 255; *Lee Bank* v. *Spencer*, 39 Dec. 734, 3 R. C. L. page 1199, sec. 418. Where a note dated at a particular bank is payable at "The First National Bank" the place of payment is the First National Bank of that place, and presentment should be made there. *Finch* v. *Calkins*, 183 Mich. 298. The only exception to the requirement that presentment for payment shall be had to charge an endorser is stated in section 2658, Hemingway's Code, section 80, Negotiable Instrument Law.

Under the facts in this case the instrument was not executed for the accommodation of Cutrer, but on the contrary, Cutrer endorsed the instrument for the accommodation of Dan Brewer. It, therefore, affirmatively appears from the Negotiable Instrument Law that it is necessary to present the instrument for payment at the Planters Bank of Clarksdale.

Presentment for payment to Brewer was insufficient under the Negotiable Instrument Law to charge Cutrer, as endorser.

"(b)" With reference to the failure of the notice of dishonor to state that it was presented to the Planters Bank of Clarksdale by merely stating that it was presented "at the office of Dan Brewer to the person in charge," we submit this was fatal and operated to discharge Cutrer from liability on the instrument.

When a promissory note is made payable at a particular place, a refusal to pay on presentment at another place is not a dishonor upon which the endorser can be charged. *North Bank* v. *Abbot*, 25 Am. Dec. 334.

147 Miss.—39.

Notice which was barely enough to put the endorser upon inquiry is not sufficient. *Cook* v. *Litchfield,* 9 N. E. 279, 281. It must reasonably appraise the party of the particular paper upon which he is sought to be charged. *Home Insurance Co.* v. *Green,* 19 N. Y. 518; *Dodson* v. *Taylor,* 56 N. Y. 11.

When in the body of a note, a place of payment is designated, the endorser has a right to presume that the maker has provided funds at such place to pay the note, and has the right to require of the holder to apply for payment at such place. *Bank of U. S.* v. *Smith,* 11 Wheat. 171.

The above rule is declared in section 2653, Hemingway's Code. There are only three cases when notice need not be given to an endorser. Section 2693, Hemingway's Code; section 115, Negotiable Instrument Law. Neither one of the provisions apply to the case now under consideration by the court.

II. The next query propounded by the court is, that the declaration alleges that notice of dishonor of the note was given Cutrer, but does not allege waiver by Cutrer of such notice, and as to whether or not a waiver of notice of dishonor by an endorser must be pleaded, and if not pleaded can evidence be introduced of such a waiver so as to be availed of by the plaintiff on the trial? With reference to the query, the authorities seem to be uniform that such a waiver not only pleaded but must be proved by clear and unequivocal proof. *Galbraith* v. *Shepard,* 43 Wash. 698, 86 Pac. 1113; *Congress Brewing Co.* v. *Hobnicht* (N. Y.), 83 App. Div. 141.

Plaintiff must allege that notice of dishonor was given to the endorser of the note, or that it was waived. An allegation that the notice was duly presented is not enough. *Wisdom & Levy* v. *Bille,* 45 So. 554. It is held that knowledge on the part of the endorser, that demand upon the maker has not been made is material, it must be proved, notwithstanding the fact that he knew that the note had not been paid, and that notice of non-pay-

ment had not been given, and was aware that he was discharged from all liability. *Parks* v. *Smith,* 155 Mass. 26, 33; *Garland* v. *Salem Bank,* 9 Mass. 408. A waiver will not be presumed without the most satisfactory proof. *Lockwood* v. *Crawford,* 18 Conn. 374; *Cook* v. *Warren,* 88 N. E. 37.

The burden of proving that due notice was given, was on the holder. *Mack* v. *Boone,* 24 Fla. 177. A majority of cases hold that a mere notice stating the fact of non-payment of the instrument, but not specifying the demand on the maker, is insufficient to render the endorser liable. *James* v. *Robinson,* 11 Ark. 504, 54 Am. Dec. 212; *Gilbert* v. *Dennis,* Metc. (Mass.), 49, 30 Am. Dec. 329.

The third query is the evidence not disclosing whether at the time Cutrer told plaintiff's agent that he would pay the note, he knew that the note had been presented for payment, and that notice of the refusal thereof had been mailed to him, and in the absence of such knowledge did the promise by him to pay the note constitute a waiver of demand and notice.

It must appear that the endorser had knowledge of the fact that the holder was in default and that all proper steps had been taken before any promise on his part to pay the note would constitute a waiver. *Thompson* v. *Wynn,* 12 Wheat. 183; *Hunter* v. *Hook,* 63 Barb. 469; *Gaultry* v. *Doane,* 48 Barb. 148; *Schriel* v. *Baumel,* 75 Wis. 75; *Glass* v. *Rounds,* 16 R. L. 235; *Aeib* v. *Bank of Evansville,* 124 Wis. 73.

Plaintiff must show affirmatively that the defendant knew that he had not been legally charged. *Hunt* v. *Wadleigh,* 45 Am. Dec. 108. If promise to pay is made without knowledge of the facts which would relieve him from liability, there is no waiver. *Commercial Bank* v. *Perry,* 43 Am. Dec. 168; *New Orleans, etc., Bank* v. *Harper,* 43 Am. Dec. 226.

The burden of proving that he had such notice was on the plaintiff. *Hunt* v. *Wadleigh,* 45 Am. Dec. 108. To

bind an endorser he must either have promised to pay or acknowledged that he was liable with knowledge of facts as they really exist. *Kennon* v. *McRea,* 7 Port (Ala.) 175. A promise to pay without knowledge that the bill had not been duly presented will not be binding. *Kelly* v. *Brown,* 5 Gray 108. Agreements of this sort were always to be strictly construed. *Isham* v. *McClure,* 12 N. W. 558.

It is incumbent upon the holder to prove that endorser made promise with full knowledge of the facts. *Walker* v. *Rogers,* 89 Am. Dec. 348; *Timble* v. *Thorne,* 8 Am. Dec. 302; *Ranson & Ranson* v. *Mack,* 38 Am. Dec. 602; *Gilbert* v. *Dennis,* 38 Am. Dec. 329; *Burgers* v. *Vreeland,* 59 Am. Dec. 408; *Jones* v. *Robinson,* 54 Am. Dec. 212.

To promise to pay as made by defendant in ignorance of his legal rights and of the laches of the plaintiff in failing to file notice is not binding. *Baskerville* v. *Harris,* 41 Miss. 535.

*Maynard, FitzGerald & Venable,* for appellee, in response to questions of the court.

I. In answering question Number 1 it seems to us necessary first to determine what notice is required. See Negotiable Instrument Law, section 89 (section 2667, Hemingway's Code); *Gresham et al.* v. *State Bank of Sunflower,* 131 Miss. 20; *F. B. Hawkins* v. *J. T. Shields,* 100 Miss. 739; *Taylor* v. *Ross et al.,* 129 Miss. 536; *Skinner* v. *Mahoney,* 140 Miss. 625.

Since notice to an endorser is essential to liability, it seems to us that the real question is whether or not the notice spoken of in the query of the court will be considered such. See section 96, N. I. L. (section 2674, Hemingway's Code). All that is necessary is for the endorser to be informed that the note has been presented for payment and has not been paid, and that the implication be carried that the endorser is being informed as such so as to hold him liable on his contract. It is not

necessary to state in the notice who is the holder of the note. It is sufficient that it state the fact of the non-payment and that the holder looks to the endorser for indemnity. *Mills* v. *Bank of U. S.*, 24 U. S. 11, Wheton, 431, 6 L. Ed. 512. The notice under discussion then is not insufficient because it does not contain a statement that the note was presented at the Planters Bank. If insufficient at all, it is insufficient because it states that the note was presented at the office of Dan Brewer to the person in charge. Undoubtedly, if the note had not been payable at the Planters Bank, this would have been a sufficient presentation. N. I. L., sections 72 and 73.

The endorser here has received notice that it was presented. He has received notice that he is looked to for payment. He has received information that it was presented at one place, and not at another. The greatest effect that this could have on the endorser would lead him to think, if he desired to insist upon it, that there had not been a proper presentment, and might lead him to think that on this ground he was not liable as endorser. It could not possibly hurt him in any way, and the actual fact as to how it was presented could be easily ascertained. Unless the errors in the notice work prejudice they are not fatal. A mistake or misdescription of a note will not render the notice insufficient, if on the whole, it cannot mislead the endorser. *Derham* v. *Donohue,* 155 Fed. 385, 83 C. C. A. 657; *Brown* v. *Jones,* 125 Ind. 375, 21 A. S. R. 227.; *Gilbert* v. *Dennis,* 38 Am. Dec. 329; *Stevenson* v. *Dickson,* 24 Pa. St. 148, 62 Am. Dec. 369; *Smith* v. *Whiting,* 12 Mass. 6, 7 Am. Dec. 25.

A misnomer of the endorser does not vitiate the notice if he knew in fact it was for him. *Carter* v. *Bradley,* 19 Me. 62, 36 Am. Dec. 735.

II. The second inquiry by the court is that where a declaration counts upon a promissory note against maker and endorser, charging that notice of dishonor was given to the endorser and does not charge that there was a

waiver of notice, can evidence be given of a waiver of notice by conduct by the endorser? Under the peculiar statute of pleading of Mississippi we are of the opinion that whatever the rule might have been elsewhere that the defendant would have had to deny notice, to which there would have been replied a waiver. There is no general issue plea to a promissory note, except *non est factum.* This was pleaded by the defendants, Brewer and Cutrer, the maker and endorser, the plea being sworn to.

Under this general issue plea the defendants gave notice of a lot of special matter which they set up in bar of the action. Nowhere in this notice under the general issue is notice of dishonor denied.

We submit that neither the failure to place such allegation in the declaration, nor the failure to reply to the special plea setting up the failure to give notice, can avail the defendant. The reason is that the defects, if any, are cured by our statute of jeofails, section 596, Hemingway's Code. Taking either method as being correct, it was a defect of pleading and was nowhere objected to during the trial by the defendant, and was therefore cured by the verdict of the jury.

Aside from this, the trial court itself is precluded by the statute of jeofails after verdict from staying the judgment for the matters covered by that statute.

III. The court next states that the evidence does not disclose that at the time Cutrer told the plaintiff's agent that he would pay the note that he knew that the note had been presented for payment, and that a notice of the refusal thereof had been mailed to him. In the absence of such knowledge was the promise by him to pay the note waiver of demand and notice?

We take issue with the court that the record does not disclose that at the time Cutrer told the plaintiff's agent that he would pay the note that he knew that the note had been presented for payment and that a notice of the re-

fusal thereof had been mailed to him. We are of the opinion, and the authorities undoubtedly sustain the position, that in order to effectively waive an accrued defense knowledge of the facts constituting the defense is necessary. Wigmore on Evidence, section 95.

In the second place, the new promise is proof of knowledge. 3 R. C. L. Bills and Notes, section 469. We submit, therefore, that even though knowledge of the facts relieving from liability is necessary to waiver there is proof in the record to sustain such knowledge on the part of Cutrer. The jury found that he had such knowledge. See *Whitwell* v. *Johnson,* 17 Mass. 449.

SMITH, C. J., delivered the opinion of the court.

This is a suit by the appellee on a promissory note executed by Dan Brewer to the Murphy Motor Company, on which J. W. Cutrer is an accommodation indorser, and of which the appellee became the owner in due course. There was a verdict and judgment for the appellee, from which Brewer and Cutrer have brought the case to this court, though error has been assigned by Cutrer only.

An automobile was sold to Brewer by the Murphy Motor Company partly on credit; the deferred payment being evidenced by a promissory note. When this note became due, a new note, indorsed by Cutrer, was executed in settlement thereof, and the suit is on this renewal note. The appellants introduced evidence that the automobile was represented to Brewer, when purchased, as being new, when, in fact, it was not, and was worth less than a new automobile, which fact was discovered by Brewer shortly after he purchased the automobile and some time before he executed the renewal note. The automobile, after its delivery to Brewer, was damaged by fire, and the appellee seems to have collected from an insurance company the amount due by the company therefor on an insurance policy it had issued thereon, and to have agreed to repair the automobile, and to deduct from the insur-

ance money an amount sufficient to reimburse it therefor. One of the defenses of the appellant is that, after deducting the legitimate expenses of repairing the automobile, there remains a balance in the hands of the appellee which should be applied to the payment of the note sued on. The evidence in this connection was conflicting, and its decision was submitted to the jury under proper instructions.

The declaration alleges the dishonor of the note and the giving of notice thereof to Cutrer. The note provides on its face that it is "negotiable and payable at the Planters' Bank at Clarksdale, Miss." The notary public testified that he presented the note to the cashier of the Planters' Bank for payment on the date of its maturity, but the cashier testified that he did not remember that the note was presented to him. An employee of the Commercial Bank of Clarksdale, where the note was sent for collection, testified that on the due date of the note he presented it for payment to Miss Mabel Hicks, an employee of the Planters' Bank; that she retained it until the bank closed for the day. This employee stated that Miss Hicks was the employee of the bank to whom he had been accustomed to present negotiable instruments payable at the bank. The cashier of the Planters' Bank testified that he did not know whether Miss Hicks was the proper employee of the bank to receive and handle this note; that her duties were to handle the daily clearings, and, if this note had been presented as a part of such clearings, it would have been her duty to receive it and present it to the proper officer of the bank for his decision as to its payment. The notice of dishonor, filed as an exhibit to the declaration, is in the form of a protest of the note by a notary public, and recites that the notary presented the note "at the office of Dan Brewer to the person in charge, and demanded payment, which was refused, and that a copy of the protest and notice was mailed to Cutrer at Clarksdale, Miss." The protest and notice given in evidence are in accord with this exhibit.

Cutrer denied receiving this notice. There was evidence that, some time after the dishonor of the note, Cutrer promised an agent of the appellee to pay the same if Brewer did not, which promise was denied by Cutrer.

The errors alleged to have been committed in the court below, and here relied on, are: (1) The refusal to direct the jury to return a verdict for Cutrer; (2) the granting of several instructions to the jury requested by the appellee; and (3) the refusal of instruction No. 11, requested by the appellants.

The grounds of Cutrer's contention that he was entitled to a directed verdict were: (1) The note was not presented for payment; and (2) notice of its dishonor was not given Cutrer.

Presentment of the note for payment at Dan Brewer's office was not sufficient to hold Cutrer as an indorser thereon; for, in order to so hold Cutrer, it must have been presented at its place of payment, the Planters' Bank of Clarksdale. Sections 73 and 87, chapter 244, Laws of 1916 (Hemingway's Code, sections 2651 and 2665); 5 Uniform Laws, Ann. 340; 2 Paton's Digest, sections 3950a and 3951a; 8 C. J. 550; Brannon's Negotiable Instruments Law (4 Ed.) 652; 3 R. C. L., 1199. Leaving out of view the evidence of the notary that he presented the note to the cashier of the Planters' Bank, the evidence of the employee of the Commercial Bank that he presented it to Miss Hicks, who retained the note until the bank closed for the day, disclosed a sufficient presentment of the note. Miss Hicks had been accustomed to handle such matters; she acted on the supposition that she had authority so to do; and the testimony of the cashier of the bank is not sufficient to negative such authority.

The notice of dishonor given to Cutrer was insufficient, for it did not set forth that the note had been presented at or to the Planters' Bank for payment. A notice of dishonor must be sufficient to indicate that it was presented at the proper place and payment refused. Chapter 244, Laws of 1916, sections 96 and 153 (Hemingway's

Code, sections 2674 and 2731). ''It was held in *Routh* v. *Robertson,* 11 Smedes & M. 382 [decided long prior to the adoption of the Negotiable Instruments Law], that when the notice of dishonor was such that the legal effect of what was stated to have been done would release the indorser, the notice was insufficient.'' *Witkowski* v. *Maxwell,* 69 Miss. 56, 10 So. 453. This defect in the notice of dishonor, however, was waived by Cutrer, if, after the maturity of the note, he promised an agent of the appellee to pay it, for ''notice of dishonor may be waived . . . after the omission to give due notice, and the waiver may be express or implied.'' Section 109, chapter 244, Laws of 1916 (Hemingway's Code, section 2687). The rule in this state prior to the adoption of the Negotiable Instruments Law was that a promise by an indorser of a promissory note to pay it, made with full knowledge that he had been released from liability thereon by the neglect of the holder, will operate as a waiver of presentment for payment, and notice of dishonor to the indorser. *Harvey* v. *Troupe,* 23 Miss. 538; *Robbins* v. *Pinckard,* 5 Smedes & M. 51; and *Moore* v. *Ayres,* 5 Smedes & M. 310. This holding is abundantly supported by authority. 8 C. J. 709; Brannon's Negotiable Instruments Law (4 Ed.), section 109; 3 R. C. L., 1242. Some of the courts hold that under the Negotiable Instruments Law such a promise to pay by an indorser waives defects in, or a failure to give, notice of dishonor, although he was not aware thereof when he made the promise. Brannon's Negotiable Instruments Law (4 Ed.), 701. It is not necessary for us to so hold, or to express an opinion thereon, for the reason that it is clear from the evidence that, if Cutrer received and examined the notice of dishonor, he knew of its defects; and that, if he did not receive the notice, as no representations appear to have been made to him relative thereto, he must have acted on the theory that no such notice had been given to him.

The declaration does not allege a waiver of the notice of dishonor by Cutrer, but it does allege the giving of

such notice, and "it is . . . settled, that a promise of payment which will dispense with proof of notice of dishonor, may be given in evidence under the usual averment of notice." *Moore* v. *Ayres,* 5 Smedes & M. 310, 8 C. J. 977.

The court instructed the jury for the appellee to find that notice of dishonor had been duly given, if they believed from the evidence that the notary public "sent through the United States mail a notice to Cutrer that the note had been presented at the Planters' Bank, Clarksdale, Miss., and dishonored." This instruction should not have been given, for the reason that there was no evidence that any notice setting forth that the note had been presented at the Planters' Bank was mailed to Cutrer. This error, however, was participated in by the appellants, for they were granted an instruction charging the jury that, before a verdict could be returned for the appellee, the jury must believe from the evidence that a notice was mailed to Cutrer setting forth that the note had been presented at the Planters' Bank, and was cured by the instruction granted the appellants "that notice of presentation and demand of payment at Dan Brewer's office is insufficient."

Two instructions were given the jury similar in effect, one of which was:

"If you believe from the evidence that, after the note became due, and was not paid, Cutrer, knowing same was due and unpaid, told Maxson or Blanks that he would see that Brewer paid the note, and, if he did not do so, then he (Cutrer) would pay the same, then he is liable on said note, even though no presentment, demand, or notice of dishonor was ever made or given to him or any one else, and defendant Cutrer is liable thereon, provided the defendant Brewer is."

If, as hereinbefore stated, Cutrer made the promise set forth in this instruction, he is not released from liability as indorser on the note because of the defect in the notice of dishonor thereof. If there is any defect in

this instruction, it is in its omission to charge the jury that, in order for the promise to be binding on Cutrer, he must have known at the time he made it of the defects in the notice of dishonor. Assuming, for the purpose of the argument, but not deciding, that such knowledge on the part of Cutrer was necessary, the omission of the requirement therefore in the instruction was proper, for the reason that it is clear from the evidence, as hereinbefore stated, that, if Cutrer made the promise, he then either knew that the notice given him was defective, or acted on the theory that no notice was given. As hereinbefore stated, the evidence disclosed that the note was properly presented for payment. Consequently, the charge in the instruction that Cutrer, because of his promise, would be liable, though no presentment was made, was harmless.

The court charged the jury, at the request of the appellee, "that, if the defendant, shortly after the purchase of the car, discovered that it was not new, kept the car, and used it for many months, and, in consideration of an extension of time for payment of the note, renewed the note for the purchase price without any objection or claim for damages in this regard, used the car again, and afterwards, when it was hurt by fire, had plaintiff repair it, they may find from these facts that the defendant Dan Brewer waived any defense on the ground that the car was not a new one, and is not now permitted to claim any offset against the note on this account," and refused an instruction for the appellants charging the jury that the execution of the new note constituted no such waiver. The ruling in the court in both instances was correct. *Colt* v. *Kelly,* 142 Miss. 617, 107 So. 757.

*Affirmed.*